UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>A & S ELECTRONICS, INC., a California Corporation d/b/a TRUSTPRICE; ALAN Z. LIN, an Individual; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No: C 15-2288 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ALL CLAIMS; DENYING ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT**<br><br>Dkt. 53 |

Plaintiff Adobe Systems Inc. ("Plaintiff" or "Adobe") brings the instant action against A & S Electronics, Inc. ("A&S"), and its owner, Alan Z. Lin ("Lin"). The First Amended Complaint ("FAC") alleges claims for trademark infringement, false designation of origin and trademark dilution under the Lanham Act; copyright infringement; and breach of contract. The parties are presently before the Court on Defendants' Motion to Dismiss All Claims, and in the Alternative, for A More Definite Statement. Dkt. 53. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion to dismiss, and DENIES the alternative motion for a more definite statement. The Court GRANTS Adobe leave to amend to file a Second Amended Complaint. The Court, in its discretion, finds this

matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

Adobe is a software company that produces and distributes Adobe Acrobat-branded software.  FAC ¶¶ 21-23, Dkt. 41.  The ADOBE® and ACROBAT® marks are registered with the Patent and Trademark Office ("PTO").  Id. ¶¶ 21-22, 38.  Defendant A&S is a corporation doing business as TRUSTprice, which sells various software products, including Adobe-branded products, through its website, www.TRUSTprice.com.  Id. ¶ 30.  Defendant Lin owns A&S and is alleged to be its alter ego.  Id. ¶¶ 4-5.

On or about April 17, 2014, A&S and Adobe entered into an Adobe Partner Connection Program Reseller Agreement ("Reseller Agreement"), pursuant to which A&S became an authorized distributor of Adobe software products.  Id. ¶ 32 & Ex. C.  Under the agreement, A&S is permitted to sell Original Equipment Manufacturer ("OEM") versions of Adobe software, provided that it is distributed as a bundle with approved hardware components.  Id. ¶ 33.  OEM software may not be unbundled and distributed separately from the specific hardware components for which they were intended.  Id.  OEM software is not the same as full retail versions of the same type of Adobe branded software, as it "usually" has "less functionality and no technical support."  Id.  According to Adobe, A&S secured the Reseller Agreement for the purpose of leading consumers to believe that it is a "legitimate" reseller, despite the fact that its conduct violated such agreement.  Id. ¶ 41.  On information and belief, Adobe claims that A&S purchased copies of Adobe-branded software from "unauthorized sources" to resell the same in the United States.  Id. ¶ 42.

Adobe regularly conducts investigations to identify sales of unauthorized, pirated and counterfeit versions of its software.  Id. ¶ 30.  On May 28, 2014, Adobe's investigator purchased a copy of Adobe Acrobat X Standard v.10 for Windows – 1 User / 2 PCs (License Key Card only – No media) ("Adobe Acrobat X Standard") from the TRUSTprice website.  Id. ¶ 37.  The shipment from TRUSTprice included a card displaying a serial

number license key ("serial license key"), which is necessary to unlock and operate the software.  Id. ¶ 38.  The card bore the ADOBE® mark.  Id.  However, the card "did not originate with [Adobe]" and appears to be "counterfeit."  Id.  Adobe claims that the serial license key corresponded to an OEM product which was not authorized for resale separate from physical media.  Id.

### B. PROCEDURAL HISTORY

On April 21, 2015, Adobe filed the instant action against A&S and Lin.  The original Complaint alleged seven claims, styled as follows:  (1) Federal Trademark Infringement, 15 U.S.C. § 1114; (2) False Designation of Origin/False or Misleading Advertising /Unfair Competition, 15 U.S.C. §1125(a); (3) Trademark Dilution, 15 U.S.C. §1125(c); (4) Federal Copyright Infringement, 17 U.S.C. § 501(a); (5) Unlawful/Unfair /Fraudulent Business Practices, Cal. Bus. & Prof. Code § 17200; (6) Breach of Contract; and (7) Digital Millennium Copyright Act ("DMCA") Violation, 17 U.S.C. § 1201.  In response to the Complaint, Defendants filed a motion to dismiss all claims, along with a motion to strike Exhibits A and B to the Complaint.  Those exhibits purported to list hundreds of trademark and copyright registrations issued to ADOBE by the Patent and Trademark Office which were potentially violated by Defendants.

On August 19, 2015, the Court partially granted Defendants' motion, dismissing: (1) the claims for trademark infringement, false designation of origin, trademark dilution, and violation of the UCL, with leave to amend; and (2) the DMCA claim without leave to amend.  The Court denied the motion to dismiss as to Plaintiff's claims for copyright infringement and breach of contract.  The Court denied Defendants' motion to strike, but ordered Adobe to file an amended complaint listing the trademarks and copyrights it has a good faith basis for claiming that Defendants infringed.

On September 2, 2015, Adobe filed its First Amended Complaint ("FAC"), which alleges the following five claims:  (1) Federal Trademark Infringement, 15 U.S.C. § 1114; (2) False Designation of Origin/False or Misleading Advertising /Unfair Competition, 15 U.S.C. §1125(a); (3) Trademark Dilution, 15 U.S.C. §1125(c); (4) Federal Copyright

1  Infringement, 17 U.S.C. § 501(a); and (5) Breach of Contract.  Dkt. 41.  In response to the
2  FAC, Defendants have filed a motion to dismiss all claims for failure to state a claim under
3  Federal Rule of Civil Procedure 12(b)(6), or alternatively, for a more definite statement
4  under Rule 12(e).  Dkt. 53.  The matter has been fully briefed and is ripe for adjudication.

## II.     LEGAL STANDARD

Rule 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'"  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile.  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

//
//
//

### III. DISCUSSION

#### A. LANHAM ACT CLAIMS

Defendants contend that Adobe's Lanham Act claims should be dismissed for the following reasons: (1) Adobe has not sufficiently alleged consumer confusion; (2) their use of Adobe's marks is permissible as nominative fair use; and (3) the claims conflict with the claim for copyright infringement. The Court discusses each contention, in turn.

##### 1. Likelihood of Consumer Confusion

"To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202-203 (9th Cir. 2012) (internal quotation marks and citations omitted). A false designation of origin claim likewise requires a showing of a likelihood of consumer confusion. New W. Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical[:] is there a 'likelihood of confusion?'").

Defendants argue that Adobe's allegations of customer confusion are deficient because they do not expressly recite that their distribution of the serial license key "actually prevented the purchaser from receiving the expected level of service or support for use [sic] Adobe Acrobat X Standard software." Dkt. 53 at 12. Although Adobe's opposition does not address this contention specifically, the Court finds the argument unpersuasive. The likelihood of confusion analysis focuses on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Rearden, 683 F.3d at 1244.[1] Thus, whether or not the purchaser in this particular instance had access to the requisite level of service and support for a domestic

---

[1] In assessing consumer confusion, courts in this Circuit typically apply the eight factors set out in: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979).

version of Adobe Acrobat X Standard software is not germane to whether a reasonably prudent customer would be confused regarding the origin of the software.

The Court likewise rejects Defendants' ancillary assertion that "[t]he FAC alleges no basis for believing that consumers visiting 'TRUSTprice.com' would reasonable believe that Adobe is sponsoring or endorsing TRUSTprice's sales." Dkt. 53 at 13.  However, the FAC expressly alleges that Defendants website advertised and sold Adobe products bearing Adobe's protected marks which they had no right to distribute.  FAC ¶ 30.  Further, Adobe avers that Defendants entered into the Reseller Agreement with Adobe "for the purpose of appearing legitimate to consumers despite said ongoing and willful infringing activities, and without any intention of abiding by the [R]eseller [A]greement." Id. ¶ 41. Those allegations, taken as true, support Adobe's claim of consumer confusion.

Finally, Defendants claim that any consumer confusion is attributable to Adobe's business practice of distributing different versions of its software in different markets at different prices.  Dkt. 53 at 12.  That argument misses the point.  The Lanham Act protects against the unauthorized use of a trademark in a manner likely to cause consumer confusion.  See 15 U.S.C. §§ 1114(1), 1125(a)(1)(A).  Whether or not Defendants engage in price discrimination does not obviate the possibility that a reasonably prudent customer would be confused regarding the sources of software as a result of their allegedly unauthorized use of Adobe's marks.

### 2. Nominative Fair Use

Defendants next contend that Adobe's Lanham Act claims fail under the doctrine of nominative fair use.  Nominative fair use is a defense to trademark infringement in cases where the alleged infringer uses a trademark "to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose." New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 306 (9th Cir. 1992); e.g., Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (holding that a car broker's domain names—"buy-a-lexus.com" and "buyorleaselexus.com" may be protected

as nominative fair use because they describe the manufacturer of the cars being sold). For the defense to apply, three criteria must be satisfied:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

Playboy Enters., Inc. v. Welles, 279 F.3d 796, 801 (9th Cir. 2002) (quoting New Kids on the Block, 971 F.2d at 308).[2]

Here, the pleadings allege that Defendants distributed a fabricated serial license key card displaying Adobe's marks in the course of distributing software neither intended for sale in the United States nor authorized to be sold separately from an OEM product. FAC ¶¶ 38, 56. According to Adobe, Defendants' use of Adobe's marks was not intended to describe Adobe's product, but rather to make it appear that the software was sanctioned by Adobe for sale and distribution. Id. In view of these allegations, the Court cannot conclude at this stage of the litigation that Defendants' use of Adobe's marks can be classified as nominative fair use. See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1099 (9th Cir. 2008) (finding that the nominative fair use defense did not apply because the defendant's use of the plaintiff's trademarked logo was not for descriptive purposes).

### 3. Conflict with Copyright Law

Defendants contend that Adobe's Lanham Act claims are precluded under Dastar Corp v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), which held that the Lanham Act should not be construed in a manner that would cause a "conflict with the law of copyright[.]" Id. at 33; see Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (noting that Dastar instructs courts "to avoid overlap between the

---

[2] In cases in which the defendant raises a nominative use defense, the above three-factor test should be applied instead of the test for likelihood of confusion set forth in Sleekcraft. Playboy Enters., 279 F.3d at 801.

1 Lanham and Copyright Acts"). But aside from citing Dastar, Defendants fail to present any
2 argument demonstrating that any conflict between Adobe's copyright and Lanham Act
3 claims exists in this case. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 930 (9th
4 Cir. 2003) ("It is [the movant's] burden . . . to present the court with legal arguments to
5 support its claims."). The mere fact that trademark and copyright claims are alleged in the
6 FAC, standing alone, does not implicate the concerns expressed in Dastar. See Luxul Tech.
7 Inc. v. Nectarlux, LLC, 78 F.Supp.3d 1156, 1172 (N.D. Cal. 2015) ("[A]t the pleading
8 stage, the Court is not persuaded that Plaintiff's Lanham Act claims are precluded merely
9 because Plaintiff also alleges copyright infringement.").

10 For the reasons set forth above, Defendants' motion to dismiss Adobe's Lanham Act
11 claims is DENIED.

### B. COPYRIGHT INFRINGEMENT

13 Defendants contend that Adobe's claim for copyright infringement must be
14 dismissed on the ground that they have not violated any exclusive right conferred to Adobe
15 under the Copyright Act. "Copyright is a federal law protection provided to the authors of
16 'original works of authorship,' including software programs." Vernor v. Autodesk, Inc.,
17 621 F.3d 1102, 1106-107 (9th Cir. 2010) (citing 17 U.S.C. §§ 101-103). In this case, the
18 FAC alleges that Defendants distributed its copyrighted software in violation of the
19 Reseller Agreement, thereby willfully infringing Adobe's copyright registrations. FAC
20 ¶¶ 36, 87-92. "To recover for copyright infringement based on breach of a license
21 agreement, (1) the copying must exceed the scope of the defendant's license and (2) the
22 copyright owner's complaint must be grounded in an exclusive right of copyright (e.g.,
23 unlawful reproduction or distribution)." MDY Indus., LLC v. Blizzard Entmn't, Inc., 629
24 F.3d 928, 940 (9th Cir. 2010). The latter element requires that "there must be a nexus
25 between the condition and the licensor's exclusive rights of copyright." Id. at 941.

26 None of the discursive arguments posited by Defendants for the dismissal of
27 Adobe's copyright infringement claim are persuasive. First, they argue that Adobe has not
28 met the second element of the MDY test; to wit, that there is a nexus between Defendants'

1 violation of the Reseller Agreement and the infringement of at least one of Adobe's
2 exclusive rights under the Copyright Act.  In particular, Defendants contend that the only
3 conduct attributed to them is the sale of a "piece of paper imprinted with a 25-digit key
4 number," which is "not copyrightable."  Dkt. 53 at 8.  The Court previously considered and
5 rejected this argument in connection with Defendants' prior motion to dismiss.  As the
6 Court explained:  "Adobe's copyright infringement claim is not premised on whether the
7 serial license key is itself copyright-protected, but rather, the assertion that Defendants
8 distributed Adobe software in violation of the Reseller Agreement."  Dkt. 40 at 6.[3]  In other
9 words, even if the serial license key is not separately subject to copyright protection,
10 Defendants' alleged distribution of the code to facilitate the sale and use of software it had
11 no right to distribute is sufficient to state a claim for copyright infringement.  S.O.S., Inc. v.
12 Payday, Inc., 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's
13 copyright if its use exceeds the scope of its license.").

14 Next, Defendants argue that no violation of the Copyright Act occurred because as
15 the putative owner of the software, they have the right to make copies of the same.  Dkt. 53
16 at 8-9.  "The Copyright Act confers several exclusive rights on copyright owners, including
17 the exclusive rights to reproduce their works and to distribute their works by sale or rental."
18 Vernor v. Autodesk, Inc., 621 F.3d 1102, 1106-107 (9th Cir. 2010) (citing 17 U.S.C.
19 §§ 101-103).  That right is not unlimited.  Id.  Under the affirmative defense known as the
20 first sale doctrine, an owner of a copyrighted work may resell those copies.  17 U.S.C.
21 § 109(a).  However, this affirmative defense is unavailable to "those who are only licensed
22 to use their copies of copyrighted works."  Id.  To determine whether a software user is a
23 licensee or an owner, courts consider whether the "copyright owner (1) specifies that the

---

[3] Defendants' present motion to dismiss includes a number of arguments which the Court previously considered and rejected.  A motion for reconsideration is subject to the requirements of Civil Local Rule 7-9, which Defendants have not followed.  Defendants are warned that repeating previously-rejected arguments may subject them to sanctions under 28 U.S.C. § 1927.

- 9 -

user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." Id. at 1111.

The Court found in its prior order that the first sale doctrine did not foreclose Adobe from pursuing a copyright infringement claim. Dkt. 40 at 5-6. In support of that conclusion, the Court noted that the Reseller Agreement explicitly provides that a reseller is granted a license to resell licenses for Adobe software to end users, and obligates the reseller to advise the end user that such software has been "licensed, not sold." Id. at 6 (citing Reseller Agt. § 2.2.1, 2.2.2).[4] Defendants respond that this requirement merely pertains to what a reseller must inform its customers, and does not establish that Adobe's software was merely licensed to them for distribution. However, the Reseller Agreement makes clear that Adobe is only granting resellers a license—and not any ownership interest—to resell a license to use its software. Reseller Agt. ¶ 2.2.1 ("Adobe hereby grants Reseller, and Reseller hereby accepts, a non-exclusive and *non-transferable license* to order Software Products under the Authorized Programs from Authorized Adobe Distributors, for the purpose of reselling to End Users in the Territory during the Term of this Agreement.") (emphasis added). In view of these allegations, the Court finds that Defendants have failed to establish the validity of the first sale affirmative defense at this stage of the litigation. See Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense.").

Defendants also posit that their conduct is permissible under the essential step defense, which is set forth at 17 U.S.C. § 117(a)(1). "Congress enacted the essential step defense to codify that a software user who is the 'owner of a copy' of a copyrighted software program does not infringe by making a copy of the computer program, if the new copy is 'created as an essential step in the utilization of the computer program in

---

[4] The Reseller Agreement is attached to the Complaint, making it part of the pleadings. Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000) (when determining if the complaint states a claim for relief "we may consider facts contained in documents attached to the complaint").

1  conjunction with a machine and . . . is used in no other manner.'" Vernor, 621 F.3d at 1109
2  (17 U.S.C. § 117(a)(1)).  Like the related first sale doctrine, the essential step defense is
3  applicable only if the alleged infringer is an owner, as opposed to licensee, of the copy of
4  the software in dispute.  Id. at 1108-109.  As discussed, the pleadings sufficiently allege
5  that Defendants are licensees, not owners.  Therefore, the essential step defense does not
6  require the dismissal of Adobe's copyright claim.  Defendants' motion to dismiss this claim
7  is therefore DENIED.

    **C.  BREACH OF CONTRACT**

        **1.  Sufficiency of the Allegations**

Adobe alleges that Defendants breached the terms of the Reseller Agreement "by ordering ADOBE® ACROBAT® software products from unauthorized distributers, offering for sale, selling, and distributing licenses for counterfeit and/or unauthorized OEM software products, by unbundling Adobe branded software, and by distributing unauthorized software serial number license keys not meant for sale in the United States and/or not meant for sale separately from physical media."  FAC ¶ 96.  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  Oasis West Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011).  Defendants challenge the second, third and fourth elements of this test.

With regard to the second element of a breach of contract claim, Defendant correctly points out that the FAC does not allege that Adobe performed its obligations (or is excused therefrom) under the Reseller Agreement.  A breach of contract claim must allege performance, though this obligation "can be satisfied by allegations in general terms."  Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1389 (1990).  Here, Adobe concedes that it has not expressly alleged its own performance, but argues that such performance is "implied" based on allegations that it entered into a Reseller Agreement with Defendants and that Defendants breached the terms of that agreement.  Dkt. 54 at 18.  The case cited by Defendants, however, does not support that proposition.

To the contrary, the complaint in that case expressly alleged that the plaintiffs "performed all conditions, covenants, and promises." Reinhardt v. Gemini Motor Transport, 879 F.Supp.2d 1138, 1143 (E.D. Cal. 2012).

Defendants next argue that its alleged one-time distribution of a serial license key does not establish a breach of the Reseller Agreement. The conduct underlying Plaintiff's breach of contract claim is much broader that Defendants purport it to be. The pleadings clearly allege, inter alia, that Defendants purchased copies of Adobe-branded software intended for international distribution, imported them into the United States, and resold them domestically—all in violation of the Reseller Agreement. FAC ¶¶ 44-46, 96. Defendants' ancillary contention that Adobe must identify the specific provisions of the Reseller Agreement allegedly breached by them is unsupported and otherwise at odds with Supreme Court authority requiring only that the pleadings provide "fair notice" of the claim being asserted and the grounds upon which it rests. Twombly, 550 U.S. at 555. Although the FAC does not identify the specific sections of the Reseller Agreement that Defendants allegedly violated, it does allege the substance of those provisions, see FAC ¶¶ 33-36, which is sufficient to survive a motion to dismiss, see Frances T. v. Village Green Owners Ass'n, 42 Cal.3d 490, 511 (1986) (holding that a breach of contract claim failed where no provision of the alleged contract imposed an obligation on the defendant).

Finally, Defendants assert that Adobe has not sufficiently alleged damages resulting from their alleged breach of the Reseller Agreement. Dkt. 54 at 17. The pleadings allege only that "Defendants [sic] willful breach of the [Reseller Agreement] has damaged Plaintiff entitling it to damages and reasonable fees and costs." FAC ¶ 97. It is unclear from these conclusory allegations what particular damages Adobe seeks as a remedy for Defendants' alleged breach of the Reseller Agreement. Dismissal of Adobe's breach of contract claim is therefore warranted. E.g., Stein v. Bank of Am., N.A., No. 2:10-cv-02827-GEB-EFB, 2011 WL 4594916, at *2-*3 (E.D. Cal. Feb. 23, 2011) (complaint failed to adequately allege damages for breach of contract where complaint only alleged that plaintiff "suffered damages"); In re Zynga Priv. Litig., No. C 10-04680 JWW, 2011 WL

7479170, at *2 (N.D. Cal. June 15, 2011) (allegation that plaintiffs have "suffered and will continue to suffer damages and losses" was insufficient to plead damages resulting from a contractual breach).[5]

In sum, the Court finds that Adobe has failed to sufficiently allege its performance under the Reseller Agreement or the nature of damages it suffered as a result of Defendants' alleged breach of that agreement.[6]  Defendants' motion to dismiss the breach of contract claim is therefore GRANTED.

### D.    MOTION FOR A MORE DEFINITE STATEMENT

As an alternative to dismissal, Defendants move for a more definite statement, pursuant to Rule 12(e), which provides:  "If a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Motions for a more definite statement are "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." Sagan v. Apple Computer, Inc., 874 F.Supp. 1072, 1077 (C.D. Cal. 1994).  A plaintiff need only "set forth enough details so as to provide the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir. 1990).  Rule 12(e) motions are viewed with disfavor and are rarely granted. Id.

Like the original Complaint, the FAC includes two attachments, identified as Exhibits A and B, each of which lists hundreds of trademark and copyright registrations held by Adobe.  In their prior motion, Defendants sought to strike these exhibits on the ground that the pleadings failed to specify which of the litany of registrations allegedly

---

[5] Adobe's reliance on California cases for the pleading requirements for contract damages is inapposite, since federal, not state law, controls pleading standard in cases venued in federal court.

[6] Alternatively, Defendants contend that the Reseller Agreement is unenforceable on the ground that it impermissibly nullifies their rights under the first sale doctrine, 17 U.S.C. § 109(a).  As discussed above, this contention lacks merit.

- 13 -

were violated by their conduct.  The Court denied the motion to strike, but, pursuant to Rule 12(e), ordered Adobe to "expressly allege each trademark or copyright that they believe Defendants have infringed."  Dkt. 40 at 18.  In response to the Court's instructions, Adobe amended its pleadings to specifically identify the trademark and copyright registrations allegedly infringed by Defendants.  FAC ¶¶ 39, 90.

In their present motion, Defendants contend that a more definite statement is necessary on the ground that Adobe has not specifically identified which of the copyright and trademark registrations listed in Exhibits A and B are at issue.  This contention is meritless.  Unlike the original Complaint, and in accordance with the Court's prior instructions, the FAC now specifically identifies the registrations allegedly violated by Defendants:

> 39.    . . . . [The] trademarks infringed by Defendants, are registered with the USPTO under Reg. Nos.: 4,488,273; 2,091,792; 4,091,791; 4,087,358; 4,083,556; 3,940,171; 3,029,061; 1,988,712; 1,956,216; 1,486,895; 1,475,793; 3,652,384; 3,652,383; 3,652,382; 2,068,523; 1,833,219; 4,488,280; 4,488,279; 4,186,925; 4,183,465; 4,087,369; 4,083,558; 3,032,288; 2,081,343; 1,988,710; and 1,901,149.
>
> *     *     *     *
>
> 90.    Without permission, Defendants . . . [distributed] . . . counterfeit ADOBE® ACROBAT® software which are at a minimum substantially similar to Plaintiff's copyright protected works . . . , namely, Plaintiff's "Adobe Acrobat X" entitled work of authorship protected by United States Copyright Office Reg. No.: TX0007357858.

FAC ¶¶ 39, 90.  In view of these allegations, the continued inclusion of Exhibits A and B as attachments to the FAC is somewhat superfluous.  Nonetheless, Adobe's specification of the trademark and copyright registrations allegedly violated by Defendants provides "a fair idea of the basis of the complaint and the legal grounds claimed for recovery."  Self Directed Placement Corp., 908 F.2d at 466.  Defendants' motion for a more definite statement is therefore DENIED.

//

//

- 14 -

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss is GRANTED with respect to Adobe's claim for breach of contract, which is DISMISSED with leave to amend. The remainder of the motion to dismiss and the alternative motion for a more definite statement are DENIED.

2. Adobe shall have fourteen (14) days from the date this Order to file a Second Amended Complaint, consistent with the Court's rulings, as set forth above. Plaintiff is advised that any additional factual allegations set forth in its amended complaint must be made in good faith and consistent with Rule 11. The failure to timely file an amended pleading will result in the dismissal of the aforementioned claim, with prejudice.

IT IS SO ORDERED.

Dated: 12/29/15

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge